# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERKLEY E. WILLIAMS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 17-2514 |
| TEMPLE UNIVERSITY | : | |
| HOSPITAL, INC., | : | |
| Defendant. | : | |

McHUGH, J.                                                                                                   DECEMBER 17, 2018

**MEMORANDUM**

This is an employment discrimination case brought by a former employee in the linen department of Temple University Hospital, Inc. [hereinafter "Temple"]. Plaintiff Berkley Williams was terminated after the manager who hired him observed him out of his work area and playing a video game on his cellphone while still on the clock. Plaintiff contends that, within his department, employees were not disciplined for using cell phones for personal reasons, so long as their work was done, and that he was treated differently because he was the oldest employee and his manager knew he was nearing retirement.

Temple moves for summary judgment, arguing that adverse rulings in Plaintiff's unemployment compensation proceedings bar his claims here. In the alternative, Temple argues that Plaintiff cannot prove that he was qualified for his position, and that the record establishes non-discriminatory, non-pretextual reasons for his discharge. Temple's first argument lacks merit. Although the question is much closer in Temple's second argument, I must still deny its motion.

**I. Relevant Facts**

Defendant Temple terminated Plaintiff Berkley Williams on January 22, 2016. Plaintiff was 61 years old at the time, the oldest employee in Temple's linen department. He had been working for Temple for 28 years, having begun his career as a patient escort in 1987 and transitioning to a materials handler in the linen department in May of 2011. While employed, Plaintiff was a member of the National Union of Hospital and Healthcare Employees AFSCME, AFL-CIO and its Affiliate District 1199C.

The incident that triggered Plaintiff's termination occurred on January 16, 2016. It involved Joseph Julia, the Manager at Temple who hired Plaintiff to work in the linen department. Specifically, about 45 minutes before the close of a 2:30 to 11 PM shift for Plaintiff, Julia observed Plaintiff outside his work area, playing a video game on his cell phone. Plaintiff's explanation is that, after he completed his assigned tasks, he was pulled away from his work area by a coworker who needed help getting a sporting event to work on a computer. He then remained in that area and played a video game on his cellphone to pass the time.

Plaintiff and Julia present different accounts of what happened next. Both agree that Julia entered the area where Plaintiff was located. But whereas Plaintiff testifies that he acknowledged Julia, and that Julia did not say anything to Plaintiff about using his phone to play a video game, Julia says that he questioned Plaintiff to no avail: Plaintiff refused to respond, and instead turned to Julia, smiled, and then went about playing on his phone. Further, Julia says that when Plaintiff did not respond, he stood behind Plaintiff for a sufficient amount of time to take a picture of Plaintiff playing videogames on his phone. Temple has produced that photograph, and Plaintiff does not dispute that it is indeed an image of him playing video games on his cell

phone. On January 19, 2016, Julia confronted Plaintiff about this incident, with the result that Plaintiff was terminated on January 22, 2016.

Julia testifies that the predicate for Plaintiff's termination was not solely this incident but the fact that it was the next step in Temple's progressive discipline policy [hereinafter "the Policy"]. The Policy involves a five-step process, with each step consisting of a corrective action in response to employee misconduct. The steps are progressive, each comprising a corrective action more severe than the last, culminating in a final step of termination. After the initial step, each subsequent step is triggered by an employee engaging in conduct that warrants corrective action.

To better illustrate, the steps are as follows:

    Step 1: Initial Discussion
    Step 2: Written Warning
    Step 3: Final Written Warning
    Step 4: 1-Day Suspension
    Step 5: Termination

A supervisor has discretion over the corrective action they issue when an employee has gone more than one year without corrective action. The supervisor may choose to either re-issue the employee's current corrective action step or issue the previous step. No such discretion exists if a corrective action is issued within one year of the most recent corrective action. Thus, someone who was issued a Written Warning (Step 2), would be issued a Final Written Warning (Step 3), if they are disciplined within a year from when they were issued the Written Warning. But if the same employee is not disciplined within the year following the Written Warning, they could be considered at Step 1, and therefore issued another Written Warning (Step 2) or be given an Initial Discussion (Step 1).

Julia testifies that Plaintiff was terminated in accordance with this framework which is captured as follows:

> Step 1: Initial Discussion – December 27, 2011
> Step 2: Written Warning – November 15, 2012
> Step 3: Final Written Warning – June 6, 2013
> Step 4: 1-Day Suspension – August 26, 2013

Plaintiff was not issued another corrective until more than a year later on April 20, 2015, at which point Julia chose to consider Plaintiff at Step 3, and so issued him another Final Written Warning. His subsequent progression is captured as follows:

> Step 3: Final Written Warning – April 20, 2015
> Step 4: 1-Day Suspension – April 30, 2015
> Step 5: Termination – January 22, 2016

After he was terminated, the Union filed a grievance on Plaintiff's behalf, but opted not to take the grievance to arbitration once it was denied. Plaintiff subsequently filed for unemployment compensation benefits on May 5, 2016. He was ultimately denied those benefits by the Erie UC Service Center, a decision that was upheld by an unemployment referee. He appealed that ruling to the Unemployment Compensation Board of Review ("UCBR") to no avail: the Board affirmed the decision of the referee. On final appeal, the Commonwealth Court of Pennsylvania then adopted the findings of the UCBR, which included that (i) Plaintiff was or should have been aware of the employer's cell phone policy, (ii) that Plaintiff was terminated in accordance with the employer's discipline policy, (iii) the employer has disciplined other employees for being out of their work area, and (iv) employees that were at the same level of discipline were disciplined in accordance with the same policies that were applied to Plaintiff. *See* Def.'s Ex. E-3, ECF No. 17-11.

Plaintiff then exhausted administrative remedies and brought this action alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§

621–34, the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. and Cons. Stat. Ann. §§ 951–63, and interference with his attainment of rights in violation of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–03.[1]

## II. Standard

This case is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III. Analysis

### A. Claim Preclusion

Federal courts give the same preclusive effect to state court judgments as courts of the state which issued them. 28 U.S.C. § 1738; *see Allen v. McCurry*, 449 U.S. 90 (1980). A Pennsylvania court issued the judgment here, and so I look to Pennsylvania law in determining the effect of the judgment.

Whereas issue preclusion has the more limited effect of barring re-litigation of a specific issue identical to that adjudicated in a prior action, claim preclusion completely bars further litigation of a claim upon which a first suit was based or a claim that could have been brought in that proceeding. *See Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). Although Temple argued that Plaintiff's claims are barred on claim preclusion grounds in its initial brief, it referenced and applied the Pennsylvania standard for issue preclusion. *See* Def.'s Mot. Summ. J. 10–11, ECF No. 17-1. Plaintiff compounded the confusion in his response brief, where he labeled the section responding to Temple's preclusion arguments "Claim Preclusion Does Not Bar Plaintiff's Age Discrimination Claims" while exclusively making arguments pertaining to issue preclusion. *See* Pl.'s Resp. 10–20, ECF No. 19. Temple's reply brief charged Plaintiff with confusing the distinction between the two doctrines and emphasized that what it sought was

---

[1] Plaintiff has withdrawn his ERISA Claim, *see* Pl.'s Resp. 1 n.1, ECF No. 19.

5

claim preclusion. *See* Def.'s Reply 2–4, ECF No. 21; *see also* Def.'s Reply to Pl.'s Sur-Reply, ECF No. 28. I view the defense argument as incorporating elements of both but, regardless of how the argument is framed, Temple cannot prevail on this basis.

On one level, Temple argues that the findings of the Unemployment Compensation Board of Review, endorsed by the Commonwealth Court, are inconsistent with Plaintiff's claims of discrimination. But those findings do not have preclusive effect because, as of 2003, the Pennsylvania Unemployment Compensation law was amended to state: "[n]o finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this act may be deemed to be conclusive or binding in any separate or subsequent action or proceeding in another forum." 43 Pa. Stat. and Cons. Stat. Ann. § 829 [hereinafter "Section 829"]. Under 28 U.S.C. § 1738, because Pennsylvania courts do not give preclusive effect to decisions made with respect to a claim for unemployment compensation, there is no legal basis upon which a federal court can do so. *See, e.g.*, *Gilson v. Pa. State Police*, 175 F. Supp. 3d 528, 566 n.31 (W.D. Pa. 2016), *aff'd*, 676 F. App'x 130 (3d Cir. 2017); *Williams v. Pa. Human Relations Comm'n*, 2016 WL 6834612, at *19 (W.D. Pa. Nov. 21, 2016), *aff'd*, 870 F.3d 294 (3d Cir. 2017); *Mathis v. Christian Heating & Air Conditioning, Inc.*, 91 F. Supp. 3d 651, 657-58 (E.D. Pa. 2015).

Temple also appears to argue that claim preclusion applies here because Plaintiff's unemployment discrimination claims were or could have been brought before the Commonwealth Court during the unemployment compensation benefits proceedings, primarily relying on *Bell v. Supermarkets Gen. Corp.*, 1993 WL 429011 (E.D. Pa. Oct. 20, 1993) and *Adams v. Purfield*, 1995 WL 610654 (E.D. Pa. Oct. 18, 1995).[2] I reject that argument. As an

---

[2] In its Reply brief, Temple also cited *Bazargani v. Haverford State Hospital*, 90 F. Supp. 2d 643 (E.D. Pa. 2000), which held that claim preclusion applied to the Title VII employment discrimination claims of a former psychiatrist

6

initial matter, although discriminatory practices of an employer are relevant in determining whether a claim for unemployment benefits was wrongfully denied, such proceedings—conducted without discovery, and presided over by referees in the first instance—are hardly an appropriate forum for vindicating important rights protected by federal law. Furthermore, for claim preclusion to apply, Pennsylvania requires that there be an identity of the cause of action sued upon, *Duquesne Slag Prods. Co. v. Lench*, 415 A.2d 53, 55 (Pa. 1980), which is not the case here. Finally, a litigant can hardly be faulted for failing to raise a claim in a forum when the controlling statute in this case, Section 829, explicitly limits the effect of the proceeding to the benefits claim being litigated under the statute. As decisions that predate Section 829, *Bell* and *Adams* no longer have persuasive force and must be considered superseded. More recent cases from this Court recognize that Section 829 now limits the impact of a ruling adverse to a claimant. *E.g.*, *Mathis*, 91 F. Supp. 3d at 658 (holding that Plaintiff is not barred from litigating his claims because Section 829 prohibits findings of fact and conclusions of law from unemployment compensation proceedings from being conclusive or binding in subsequent actions). On that basis, I conclude that the unemployment compensation proceedings lack preclusive effect.[3]

---

at Haverford State Hospital because she could have but did not present her claims to the Pennsylvania State Civil Service Commission. In his Sur-Reply, Plaintiff aptly distinguished that case on the basis that the plaintiff in Bazargani contested her discharge under the state's Civil Service Commission Act, whose language mirrored that of Title VII. *See* Pl.'s Sur-Reply 2–3, ECF No. 25. Temple has since argued that it only relied on *Bazargani* for its description of the difference between issue and claim preclusion. *See* Def.'s Reply to Pl.'s Sur-Reply, ECF No. 28. I accept that characterization and do not otherwise address *Bazargani*.

[3] Twenty-nine other states have this provision in their unemployment compensation statute. *See* William E. Hartsfield, *3 Investigating Emp. Conduct*, Appendix I-27 (2018). Section 829 came after some of these provisions, which, by then, had already been construed as having the effect I now give Section 829. *See, e.g.*, *Harmon v. Paintsville Hosp. Co.*, LLC, 2011 WL 4900019, at *2 (E.D. Ky. Oct. 14, 2011) (referencing an analogous provision in the Kentucky employment compensation statute and stating, "[b]oth Kentucky state and federal courts have held that factual determinations made in Kentucky unemployment compensation hearings have no binding or preclusive effect."); *Rue v. K-Mart Corp.*, 691 A.2d 498, 506-07 (Pa. Super. Ct. 1997) (predating Section 829's passage but referencing that Kentucky provision and those of other states to bolster the conclusion that rulings in unemployment compensation proceedings must not be afforded any preclusive effect), *aff'd*, 713 A.2d 82 (Pa. 1998) (limiting the

### B. ADEA Claims

In Counts I and II of the Complaint, Plaintiff seeks recovery for discrimination under the ADEA. The ADEA prohibits discrimination in employment against any person based on age. 29 U.S.C. § 623(a)(1). Although Plaintiff's ultimate task is to establish by a preponderance of the evidence that age was the "but-for" cause of the defendant's decision to terminate him, *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides the well-known analytical framework:[4] (i) first, Plaintiff must establish a prima facie case of age discrimination; (ii) if he does so, Temple must then rebut that presumption by providing a legitimate, non-discriminatory reason for terminating Plaintiff; and if Temple succeeds, (iii) it becomes Plaintiff's burden to demonstrate that those reasons are pre-textual to survive summary judgment. 411 U.S. at 802–03.

#### i. Plaintiff has established a prima facie case of age discrimination.

To establish a prima facie case of age discrimination, a plaintiff must show that (1) he was over the age of 40, (2) qualified for the position he held, (3) suffered an adverse employment action, and (4) the adverse action took place under conditions giving rise to an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356-57 (3d Cir. 1999) (highlighting that the Third Circuit has "repeatedly emphasized that the requirements of the prima facie case are flexible," particularly the fourth element).

Temple only challenges the second element, arguing that Plaintiff cannot make out a prima facie case because he was not qualified for his position. Temple points to Plaintiff's

---

holding, however, to only where the elements of collateral estoppel were not met).

[4] The same analysis applies to Plaintiff's PHRA age discrimination claim. *See Smith v. City of Phila., Dep't of Licenses & Inspections*, 285 F. Supp. 3d 846, 851 n.10 (E.D. Pa. 2018) (citing *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 845 (3d Cir. 2016) and *Weston v. Pa.*, 251 F.3d 420, 426, 433 n.3 (3d Cir. 2001)).

disciplinary record, including his conduct on January 16, 2016, to support that contention. But construing the evidence in the light most favorable to the nonmoving party, Plaintiff's twenty-eight-year career working for Temple, including several advancements, one of which was his most recent five-year stint in the linen department, leads to the inference that he was qualified for the position from which he was discharged. *See, e.g.*, *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) ("[S]atisfactory performance of duties over a long period of time leading to a promotion established his qualifications for the job.")

Because Plaintiff has stated a prima facie case of age discrimination, there is a presumption in his favor, which Temple must rebut by providing evidence of a legitimate, non-discriminatory reason for terminating him.

> *ii. Temple has proffered a legitimate, non-discriminatory reason for terminating Plaintiff.*

According to Plaintiff's final "Corrective Action/Discipline Report for Union Employee," his conduct on January 16, 2016, which included being out of his work area, on his phone, and playing a video game, violated Corrective Action and Discipline Policy #950.544 and Temple's Service Excellence Standards. Def.'s Mot. Summ. J. Ex. B-3, ECF No. 17-5. Julia, the Manager who filled out that form, explained that the predicate for Plaintiff's firing was that incident, in conjunction with the fact that Plaintiff was previously at Step 4 of Temple's Corrective Action Policy. Specifically, Plaintiff was disciplined four times between 2011 and 2013, with each corrective action occurring within a year of the previous. At one point, he received two corrective actions within a few months. As a result, as of August 26, 2013, Plaintiff was at Step 4, the 1-Day Suspension phase of the policy. Plaintiff did not receive another corrective action until April 20, 2015. Julia chose to give Plaintiff another final written warning pursuant to Step 3, as opposed to terminating him as Step 5 would warrant. But less than two weeks later on

9

April 30, 2015, Plaintiff was issued a 1-Day Suspension, with the result that the aforementioned January 16, 2016 incident placed him at Step 5: Termination. Thus, culminating in the incident in which Plaintiff was away from his work area and playing video games on his cell phone, Plaintiff's discipline progressed as follows:

> Step 1: Initial Discussion – December 27, 2011
> Step 2: Written Warning – November 15, 2012
> Step 3: Final Written Warning – June 6, 2013
> Step 4: 1-Day Suspension – August 26, 2013
> Step 3: Final Written Warning – April 20, 2015
> Step 4: 1-Day Suspension – April 30, 2015
> Step 5: Termination – January 22, 2016

This evidence suffices to establish legitimate, non-discriminatory reasons for terminating Plaintiff: first, that Plaintiff's conduct on January 16 violated Temple's policies, and second, that he was at Step 4 of the policy prior to that, which meant Step 5 (Termination) was warranted.[5] Thus, to defeat Temple's summary judgment motion, Plaintiff must demonstrate those reasons are pretextual.

### iii. *Plaintiff has demonstrated that Temple's reasons are pretextual.*

To demonstrate pretext, Plaintiff needs to point to some direct or circumstantial evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994)).

In alleging pretext, Plaintiff first lays out what he deems are significant weaknesses in Temple's proffered justification, and thereafter asserts that Temple failed to follow its own

---

[5] Temple also points to the findings made by the UCBR to support its position. It is not immediately clear what Temple's seeks to accomplish by that reference, given Section 829's mandate. To the extent that it is an invitation to give some probative value to those findings, I decline. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, *the weighing of the evidence*, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (emphasis added); *see also Williams*, 2016 WL 6834612 at *19 n.10.

progressive policy in his case, citing Julia's testimony, which he characterizes as an admission that Plaintiff should have been put on a one-day suspension.

Plaintiff's argument that the disciplinary policy was misapplied lacks merit. Plaintiff relies on Julia's testimony before the unemployment referee, quoting Julia as stating that "every year that an employee has a clean record with no level of discipline, the level that they're at is taken back one step . . . so when [Plaintiff] was given the initial one day suspension on the 8/20/13, another incident happened on 4/20/15 which is a year and a few months." Pl.'s Resp. 6, ECF No. 19. Plaintiff construes this as an admission that he should have been given a one-day suspension for the January 16 incident (Step 4) since the April 2015 one day suspension was more than a year old.[6]

But read in full, it becomes clear that Julia's comments were aimed at illustrating how the progressive discipline policy operated when Plaintiff had more than a year gap between two corrective actions. Specifically, Plaintiff's counsel asked Julia whether discipline steps are eliminated after a certain time period, and Julia ultimately responded,

> So what happens is every year that an employee has a clean record with no level of discipline, the level that they're at is taken back one step. So if you're at one day suspension level and you get by a year clean, you go back one step to written warning and then your next action, your next discipline would go back to one day suspension. So when [Plaintiff] was given the initial one day suspension on the 8/20/13, another incident happened on 4/20/15 which is a year and a few months. So he was at one day suspension, he would go back, and he had a year clean, so he goes back to final written warning. Then this incidence [sic], this incident warrants the next step as one day suspension. But it's up to the discretion of the department. I could also keep him, because it was over a year, I could keep him at the same level and not progressively discipline him. So what we chose to do, even though he was at suspension again, we cut him at the same level of final

---

[6] It bears mention that Plaintiff was formally disciplined twice in April 2015 (once on April 20, and again on April 30), which might help to explain his confusion as to which step he was on when the January 16, 2016 incident took place.

written warning April 2015.

Pl.'s Resp. Ex. B, at 16-17, ECF No. 19-2. Julia explained that, even after there is a one-year gap between disciplinary actions, it is within his discretion whether a particular employee will be taken down a step, and that, in Plaintiff's case, he decided to take him down a step for the April 20, 2015 incident.

Although I cannot conclude that Julia misapplied the Policy, the second half of Plaintiff's argument, that he was treated differently than other employees, is more persuasive. First, Julia admits that there is a large discretionary component to his application of the Policy. Both parties rely upon disciplinary records. Temple cites the records in support of an argument that other employees were disciplined for similar behavior. Plaintiff responds that it was acceptable within his department to use electronic devices if employees' work was otherwise complete. Critically, Plaintiff asserts that Julia did not have to terminate him, but could have issued an informal warning, which is substantiated by Julia's own testimony that he does not always issue formal discipline, but only where he deems it necessary—i.e. where he has had issued numerous informal verbal warnings. *See* Pl.'s Resp. Ex. C, at 22-23, ECF No. 19-3 (expressing that, like others, he, Julia, previously observed Plaintiff watching movies on his phone but chose to verbally discipline him, rather than documenting it). From the parties' presentation, I cannot discern which is correct, and this cuts against Temple as the moving party.

Temple also fails to address an inconvenient fact, the apparently gratuitous reference to Plaintiff being near retirement age. The evidence consists of a note stating "Term – Jan – on phone – ignored Joe," followed by "Joe thinks he's close to retirement; not sure when retiring"). Pl.'s Resp. Ex. D, ECF No. 19-4. This note is subject to varying interpretations, but certainly relevant in a case alleging age discrimination and, on summary judgement, I cannot assume the

reference is benign. The record reflects that Julia hired Plaintiff for a role in the linen department when Plaintiff was in his late fifties, which seemingly cuts against a bias based on age, but the reference to retirement could reflect Julia's regret at having brought Plaintiff into his department at that stage in his working life.

Williams' case is far from robust, but Temple asks me to draw far too many inferences adverse to Plaintiff when the prevailing standard requires exactly the opposite.

## IV. Conclusion

Plaintiff having withdrawn it, Count III is dismissed. In all other respects, I deny Defendant's Motion for Summary Judgment.

/s/ Gerald Austin McHugh
United States District Judge